AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | |
|---|---|
| United States of America<br>v.<br><br>KWAME O. YEBOAH<br><br>*Defendant(s)* | Case No. 2:20-mj-154 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  May 5, 2015 - May 28, 2019  in the county of  Franklin  in the
Southern  District of  Ohio  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18-U.S.C. 1956(h) | Money Laundering Conspiracy |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Shawn Mincks, Special Agent, IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 3-3-20

_____
Judge's signature

City and state: Columbus, OH    Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AFFIDAVIT**
IN SUPPORT OF CRIMINAL COMPLAINT

I, Shawn Mincks, Special Agent, U.S. Department of the Treasury, Internal Revenue Service, Criminal Investigation, being duly sworn, depose and say that:

**Introduction and Purpose**

1. I am a Special Agent with IRS-Criminal Investigation and have been so employed since 2008. I have received specialized law enforcement training at the Federal Law Enforcement Training Center, Glynco, Georgia and additional specialized training from the IRS.  My duties as a Special Agent include conducting investigations of individuals and businesses that have violated Federal Law, particularly those laws found under Title 18, Title 26 and Title 31 of the United States Code.  I have participated in multiple such investigations, including several investigations related to individuals who launder funds derived from romance and other international fraud schemes.

2. I am assigned to pursue a federal criminal investigation of Kwame Yeboah (Yeboah) and other co-conspirators. I make this affidavit in support of the filing of a criminal complaint against Yeboah and contend there is probable cause to believe that he and his co-conspirators were and are engaged in a conspiracy to commit money laundering in violation of 18 USC 1956(h).

**Evidence in Support of Probable Cause**

3. Through interviews and analysis of bank records and other documentation, I believe the investigation to date tends to show that Yeboah and others, both known and unknown, have been engaged in a conspiracy to commit money laundering in that they have knowingly and willfully facilitated the receipt, concealment and transfer of funds derived from so-called "Romance Scam" victims.

4. Perpetrators of the scams post fake profiles on various dating websites, then individuals throughout the United States and other countries are contacted by or enticed to initiate contact with the perpetrators.  After contacting the victims online, the perpetrators use email, instant messaging services, text messaging and phone calls to build a relationship of trust with the victims.  Once trust is gained, the perpetrators convince the victims to provide money purportedly for various investments or need-based reasons.  The perpetrators tell many of the victims that they are overseas.  The perpetrators further explain, for example, that they have located a gold or diamond mine through which they can both become very wealthy if the victim

1

invests money; have had financial trouble and need assistance; or have had legal trouble, are in prison and need money to pay off the captors. The victims then wire transfer, direct transfer or deposit money into bank accounts located within the United States and controlled by Yeboah and/or other co-conspirators. Evidence indicates that many of these bank accounts were opened in the names of business entities controlled by the co-conspirators. The victims provide the funds with the expectation that the money will be invested or used to assist their online "friend."

5. Contemporaneous and subsequent to the wire transfers, account transfers and deposits received by the co-conspirators from the victims, the co-conspirators dispose of the funds through cash withdrawals; checks issued to parties known to the co-conspirators; transfers to each other; international and domestic wire transfers; personal expenditures; and purchases of official checks. None of the victims receive any return on their "investments" or any of their money back. The loss to all victims exceeds $7 million.

6. I believe that evidence garnered so far in the investigation tends to show that the recipients of the funds, specifically Yeboah, knew that the funds they were receiving were derived from some kind of unlawful activity, and the funds were, in fact, derived from a specified unlawful activity, namely wire fraud (18 USC 1343). From the recipient bank accounts, the funds were not used in the manner promised to the victims of the fraud. Instead, the funds were transacted in a fashion designed to conceal the nature and source of the funds through cash withdrawals and other mechanisms. Additionally, many debits were in excess of $10,000. Since they were working in concert with each other, as well as the perpetrators of the Romance Scams, the activity was in violation of 18 USC 1956(h).

<u>Relevant Bank Accounts and Entities</u>

7. According to records from the Ohio Secretary of State, Yeboah established Brightstar Automotive on May 5, 2015 by filing Articles of Organization with the State of Ohio. According to bank records, Yeboah opened and controlled the following bank accounts in the name of Brightstar Automotive:

      a. June 2, 2017 – February 2, 2018 – JP Morgan Chase Bank account # xx2366 (JPMC 2366).

      b. December 18, 2017 – October 31, 2018 – Bank of America account # xx0009 (BOA 0009).

      c. October 5, 2018 – Present – US Bank account # xx3133 (US 3133).

      d. April 9, 2019 – Present – PNC Bank account # xx0518 (PNC 0518).

Yeboah was the sole signer on all four of the bank accounts.

8. According to an interview with Person 14, whose identity is known to your Affiant, Person 14 met somebody she believed to be named Rene Rehpenning who claimed to work on an oil rig in Qatar. Rehpenning eventually asked Person 14 to accept a box for him which was to contain $250 million. Rehpenning also claimed at one point that he had been arrested. Rehpennig and various other alleged individuals enticed Person 14 to send money related to the box of money, incarceration or other fictitious needs in order to pay fees, fines and expenses. Person 14 stated that she was defrauded out of $5 million over a period of one year. Bank records show that, on December 5, 2017, Person 14 wired $85,000 to JPMC 2366, which was in the control of Yeboah.

9. According to an interview with Person 15, whose identity is known to your Affiant, Person 15 stated that he met somebody he believed to be named Dennis Dyer on an online dating website in the fall of 2017. Dyer claimed he was in the military in Syria or Afghanistan and had amassed a significant supply of diamonds and gold. Dyer asked Person 15 for money to pay for customs and shipping fees related to shipping boxes full of these items back to the United States. Person 15 sent approximately $700,000 to various people over a two-month period at Dyer's direction. Bank records show that, on December 6, 2017, Person 15 transferred $160,000 to JPMC 2366, which was in the control of Yeboah. Person 15 expected to be repaid when Dyer came to the United States. Dyer never came to the United States, and Person 15 has not been repaid.

     a. Bank records show that, after receiving the funds from Person 14 and Person 15 into JPMC 2366 and on or about the dates set forth below, Yeboah engaged in the following monetary transactions in criminally derived property of a value greater than $10,000:

         i. December 6, 2017 - $50,000 wire to a bank account held in China;

         ii. December 7, 2017 - $70,000 wire to Company 4 in China;

         iii. December 7, 2017 - $30,000 wire to Company 3 in China;

         iv. December 7, 2017 - $30,000 wire to a bank account held in Hong Kong;

         v. December 7, 2017 - $20,000 wire to a company located in the United States.

10. According to an interview with the daughter of Person 6, whose identity is known to your Affiant, Person 6 has been admitted to a psychiatric ward because of scams perpetrated upon him by various individuals known to Person 6 as Jack Renteria and Diplomat Keith Harper.

3

According ot the daughter, Person 6 lost $800,000 due to these scams. Bank records show that Person 6 deposited $24,900 in cash into BOA 0009, which was in the control of Yeboah, on February 23, 2018.

11. According to an interview with Person 9, whose identity is known to your Affiant, Person 9 met somebody he believed to be named Roger Snider on an online dating website in December of 2017. Snider told Person 9 that he was a soldier serving in Syria. Snider told Person 9 he had saved a woman's life, and a rich oil barren wanted to reward him by paying him $2 million in gold. Person 9 provided a total of approximately $471,000 to numerous people at Snider's direction related to a supposed package containing the $2 million in gold. Bank records show these funds included wires totaling $58,400 to BOA 0009, which was in the control of Yeboah, on January 22, 2018 and January 23, 2018.

   a. Bank records show that, after receiving the funds from Person 6 and Person 9 into BOA 0009 and on or about the dates set forth below, Yeboah engaged in the following monetary transactions in criminally derived property of a value greater than $10,000:

      i. January 25, 2018 - $30,000 wire to Company 3 in China;

      ii. February 27, 2018 - $22,850 wire to Company 3 in China

   b. Bank records show that, after receiving the funds from Person 6 and Person 9 into BOA 0009 and on or about the dates set forth below, Yeboah engaged in the following financial transactions, among others, involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

      i. January 24, 2018 - transfer of $5,000 to Conspirator 8;

      ii. January 24, 2018 – transfer of $7,500 to Conspirator 7.

12. According to an interview with Person 16, whose identity is known to your Affiant, Person 16 stated that, after her husband died, she received an unsolicited social media message from somebody she believed to be named Ben Grayson. Grayson told Person 16 that he was in the army in Afghanistan. Eventually, Grayson asked Person 16 to send him money to pay for fees and costs associated with shipping a box from Afghanistan to the United States. Later, Grayson told Person 16 that he needed money to help pay for his transportation back to the United States. Person 16 sent money to various places at his request and expected to be repaid. Bank records show that, on May 23, 2019, Person 16 wired $18,000 to PNC 0518, which was in the control of Yeboah. Grayson did not travel to the United States, and a box never arrived from

4

Afghanistan. Person 16's money has not been returned to her.

    a. Bank records show that, after receiving the funds from Person 16 into PNC 0518 and on or about the dates set forth below, Yeboah engaged in the following financial transactions, among others, involving the proceeds of wire fraud to conceal or disguise the nature, location, source, ownership, or control of the proceeds:

        i. May 24, 2019 - $8,000 cash withdrawal;

        ii. May 28, 2019 - $6,000 cash withdrawal;

13. Person 16 also wired $40,000 to US 3133, which was in the control of Yeboah, on May 15, 2019.

    a. Bank records show that, after receiving the funds from Person 16 into US 3133 and on or about the date set forth below, Yeboah engaged in the following monetary transaction in criminally derived property of a value greater than $10,000:

        i. May 21, 2019 - $41,571 withdrawal, which consisted of the purchase of seven official checks payable to automobile auction companies.

14. I have also reviewed bank accounts held in the United States by other co-conspirators. The accounts displayed the same characteristics as those described herein in that they received money from victims of romance fraud, and the money was almost immediately transacted in order to conceal the nature, source, location, and control of the funds. Yeboah sent money to and/or received money from some of these accounts.

15. Between September 20, 2019 and November 14, 2019, IRS-CI conducted a Pen Register and Trap and Trace on WhatsApp phone numbers associated with Yeboah and other co-conspirators. The Pen and Trap revealed that Yeboah and the others were in frequent communication with each other throughout the monitored time period. It further revealed that Yeboah was in frequent communication with numerous phone numbers based in Ghana and sent these numbers text messages, audio files, video files and image files

## Conclusion

16. Based on the information presented in this affidavit, I contend that Yeboah and others were and are engaged in a conspiracy to commit money laundering in violation of 18 USC 1956(h).

5

_____
Shawn A. Mincks
Special Agent, IRS-CI

Subscribed and sworn to before me

This ____3____ day of ____March____, __2020__

_____
Chelsey M. Vascura, U.S. Magistrate Judge

6